IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H.W., *et. al.*, | : | 1:18-cv-147 |
| | : | |
| Plaintiffs, | : | |
| | : | Hon. John E. Jones III |
| | : | |
| MECHANICSBURG AREA | : | |
| SCHOOL DISTRICT, | : | |
| | : | |
| Defendant, | : | |

## <u>**MEMORANDUM & ORDER**</u>

**March 20, 2018**

Plaintiffs initiated this action by filing a complaint with this Court on

January 19, 2018. (Doc. 1). The complaint seeks certain declarations regarding a

decision by a Hearing Officer from the Office of Dispute Resolution ("ODR"), an

order requiring the Defendant Mechanicsburg Area School District ("Defendant"

or "District") to return Plaintiff H.W. to a certain educational placement,

compensatory education, and attorney's fees and costs. (Doc. 1). Presently pending

before the Court is Plaintiffs' motion for a preliminary injunction. (the "Motion").

(Doc. 2). The Motion seeks all of the same relief except for compensatory

education and attorney's fees. (Doc. 2). The Motion has been fully briefed (Docs.

3, 11, 14), the ODR has filed the Administrative Record with the Court (Docs. 17,

22), and the parties have filed a number of factual stipulations to aid the Court in

its review. (Doc. 26). Additionally, on March 16, 2018, the Court convened an

1

evidentiary hearing where the parties presented additional testimony. The Motion is therefore ripe for our review.

## I.   BACKGROUND

H.W. attends school within the District and has a disability that requires specially-designed instruction. (Doc. 26, p. 2, ¶ 1). On August 17, 2017, the District sent a Notice of Recommended Educational Placement / Prior Written Notice ("NOREP/PWN") to H.W.'s father, Plaintiff S.W. (*Id.* at p. 3, ¶ 4). The NOREP/PWN proposed to change H.W.'s then-current educational placement to a Therapeutic Emotional Support placement. ("TES") (*Id.* at ¶ 5). The NOREP/PWN provided the following direction:

> **8. PARENTAL CONSENT**
> Directions for Parent/Guardian/Surrogate: Please check one of the options, sign this form, and return it within 10 calendar days. In circumstances when this form is NOT completed and parent consent is NOT required, the school will proceed as proposed after 10 calendar days.
>> ____ I request an informal meeting with school personnel to discuss this recommendation.
>> ____ I approve this action / recommendation.
>> ____ I do not approve this action / recommendation.* My reason for disapproval is:
>>
>> _____
>> I request (Contact the Office for Dispute Resolution at 800-222-3353 for information on Mediation and Due Process Hearing):
>> ____ Mediation
>> ____ Due Process Hearing.
>>
>> * Except for placement in an interim alternative educational setting due to drugs, weapons, or serious

bodily injury (§300.530(i), and §300.531), if you do not approve the action / recommendation, your child will remain in the current program / placement only if you request a due process hearing or mediation through the Office for Dispute Resolution. If you do not request Due Process or Mediation through the Office or Dispute Resolution, the LEA will implement the action / recommendation.

(Doc. 17, att. 4, p. 4). S.W. checked the box for "I do not approve this action/ recommendation." (*Id.*). In the space for the reason for his disapproval, he wrote "See comments below." (*Id.*). On the bottom of the form, S.W. wrote:

Comments
    Hailey was admitted to the Janus school for the 2017-18 school year. The districts TES placement is not appropriate to help Hailey's untreated learning disabilities + speech services, denied to Hailey over the years.

(*Id.*). S.W. did *not* check a box for either mediation or a due process hearing. (*Id.*). S.W. signed the form on August 23, 2017 and hand delivered it to the District on Thursday, August 24, 2017. (*Id.*) (Doc. 26, p. 3, ¶ 7). On Wednesday, August 23, 2017, Plaintiffs' counsel emailed counsel for the District. (Doc. 17, att. 4 , pp. 6-7). Therein, Plaintiffs' counsel specifically stated that S.W. plans "to move forward with a hearing, and as such, requested due process hearing, which is what he planned since receiving the NOREP on August 17, 2017." (*Id.* at p. 6). Counsel also recognized the ten-day deadline of the NOREP/PWN, noting that the tenth day falls on a Sunday and advising that a due process complaint will be filed on Monday, August 28, 2017. (*Id.*).

3

On Monday, August 28, 2017, Plaintiffs filed a due process complaint with the ODR to challenge the District's proposed change of educational placement for H.W. (Doc. 17, att. 6). That same day, but prior to the filing of the complaint, counsel for the District emailed Plaintiffs' counsel and advised that ten days had expired and no complaint had been filed. (Doc. 17, att. 4, p. 8). Counsel for the District stated that the District therefore "is proceeding to transition" H.W. to the proposed program outlined in the NOREP/PWN. (*Id*.). Counsel advised that "10 days expired on August 27, 2017, Sunday, and no complaint or request for mediation was filed. Stay-put or pendency is now in the District's proposed August NOREP program." (*Id*.). Counsel proposed a meeting with H.W. and S.W. to "outline how [H.W.] will begin being supported by the TES programming outlined in the IEP and NOREP." (*Id*.). The District, however, did not implement the changes to H.W.'s program until after the meeting. (Doc. 26, p. 5, ¶ 18).

On Wednesday, August 30, 2017, S.W., H.W., and representatives from the District met to discuss H.W.'s educational plan. (*Id*. at p. 4, ¶ 14). At that meeting, the District and S.W. agreed that H.W. would participate in a regular education Fashion Design course instead of group support in the TES classroom. (*Id*. at ¶ 15). During the evidentiary hearing, S.W. testified that he had been told that the District's position was that his objections to the NOREP/PWN were untimely and that the District was moving forward with placing H.W. in the TES program. The

4

District implemented the TES placement following the meeting, with the agreed modification for the Fashion Design course, and H.W. has been in that placement since September 5, 2017. (*Id*. at p. 5, ¶ 18).

Plaintiffs filed an amended due process complaint with the ODR on September 22, 2017 that requested determination of pendency. (*Id*. at ¶ 20). Pendency refers to the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1415(j). Pursuant to the stay-put provision, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. 1415(j).

On November 30, 2017, the Hearing Officer issued a memorandum and order concluding that the Defendant did not violate the stay-put provision of the IDEA. (Doc. 17, att. 1, pp. 1-16). The Hearing Officer made the following relevant factual findings:

- "At the time of the August 30, 2017, meeting to discuss the Student's transition to the Therapeutic Emotional Support placement/program the District had actual knowledge of the filing of the due process Complaint." (Doc. 17, att. 2, p. 6).

- "The then current placement and program at the time of the filing of the due process Complaint Notice, on August 28, 2017, was the Learning Support Program as described in the 2017-2017 IEP." (*Id*. at p. 7).

Despite finding that H.W.'s then-current placement at the time of the complaint was the Learning Support Program and not the District's proposed TES program, the Hearing Officer came to the following conclusion:

> . . . the August 30, 2017, meeting changed "stay put." Both sides were aware of the due process Complaint. Both sides discussed their respective positions which resulted in an agreed [sic] to modification of the District's proposed program/placement. Although the Parent contends he had no other choice, I disagree. . . After carefully studying the exhibits and the transcript, I now find that as a result of the August 30, 2017 meeting, the Parties reached an agreement, within the meaning of 34 CFR 300.518(a), to change the Student's pendent placement during the course of proceedings.

(Doc. 17, att. 2, p. 13). Plaintiffs appeal the November 30, 2017 order. (Doc. 1). In their complaint, Plaintiffs seek declaratory judgment, an order returning H.W. to her then-current educational placement as of August 28, 2017 as determined by the Hearing Officer, and an award of compensatory education and attorney's fees. (Doc. 1). The declarations sought are as follows:

> 1. DECLARE that the filing of the due process complaint in this matter on Monday, August 28, 2017, preserved H.W.'s right to remain in her then-current educational placement under 20 U.S.C. § 1415(j).
>
> 2. DECLARE that H.W.'s then-current educational placement at the time the due process complaint was filed was her placement in general education and learning support classes.
>
> 3. DECLARE that S.W. did not agree to modify H.W.'s then-current educational placement.

(Doc. 1, p. 12). The pending Motion seeks identical declarations and an order to return H.W. to her then-current educational placement of August 28, 2017.

6

(Doc. 2, pp. 8-9). The District did not appeal any findings or conclusions of the Hearing Officer.

## II.    LEGAL STANDARD

This Court has jurisdiction to review the decision of a state hearing officer under 20 U.S.C. § 1415(i). "When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified de novo' review." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). The Court makes its own findings by a preponderance of the evidence, *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004), but also gives "'due weight' and deference to the findings in the administrative proceedings." *Bayonne Bd. of Educ.*, 602 F.3d at 564. Where the Court hears additional evidence, it is "free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the [IDEA]." *Oberti v. Bd. of Educ. of the Borough of the Clementon Sch. Dist.*, 995 F.2d 1204, 1220 (3d Cir.1993).

The Third Circuit has held the traditional 4-factor test for preliminary injunctions is inapplicable to Section 1415(j) cases. *D.M. v. New Jersey Dep't of Educ.*, 801 F.3d 205, 211 (3d Cir. 2015). Rather, Section 1415(j) establishes an automatic preliminary injunction, and preserves the student's educational *status*

*quo* when parents and educators disagree on educational placements. *Id.* Section 1415(j) allows the student to "stay put" in the educational placement operative at the time her due process complaint is filed; the injunction remains in place pending administrative proceedings and district court litigation over the proposed change. *Id.*

## III.   DISCUSSION

The salient question before this Court is whether the parties came to an agreement that waived the stay-put provision of the IDEA at the August 30, 3017 meeting. The Hearing Officer answered that question in the affirmative. (Doc. 17, att. 2, p. 13). If we agree with the Hearing Officer, then the Motion must be denied. If we find that there was not an agreement that waived the stay-put provision, we then must determine what H.W.'s then-current educational placement was at the time that the due process complaint was filed and order the District to return H.W. to that placement.

It is undisputed that, at the time of the August 30, 2017 meeting, counsel for the District had advised Plaintiffs' counsel that the District believed that the due process complaint was untimely, that pendency was now in the District's TES program, and that the District intended to transition H.W. to the proposed TES program. (Doc. 17, att. 4, p. 8). S.W. testified at the evidentiary hearing before this Court that he went to the August 30, 2017 meeting under the impression that

H.W.'s transition to the TES program was inevitable. While he did negotiate with the District and agree that H.W. would be enrolled in a regular education Fashion Design course instead of group support, that agreement was made in light of the District's notice that it would transition H.W. to the TES program regardless of his due process complaint.

The Hearing Officer considered S.W.'s contention that "he had no other choice" but to agree to a modified program in an effort to mitigate the damage of the inevitable TES placement, but was not persuaded because "the time to be vigilant and assert 'stay put' was time sensitive." (Doc. 17, att. 2, p. 13). We disagree with the Hearing Officer. Any agreement made at the August 30, 2017 meeting was made pursuant to the District's notice that it viewed the due process complaint as untimely and planned to transition H.W. to the TES program regardless of S.W.'s objections. S.W. came to the meeting with his hands tied behind his back; we find by a preponderance of the evidence that his agreement with the District for H.W. to attend Fashion Design instead of group support was made in an attempt to mitigate the damage of the TES program that the District was inevitably going to implement. We now hold that this agreement effectuated a waiver of the stay-put provision of the IDEA *only if* the District properly asserted that the due process complaint was untimely.

The IDEA gives plaintiffs two years from the time that an alleged violation occurs to file a due process complaint or a request for a due process hearing. 20 U.S.C. § 1415(b)(6)(B) and (f)(3)(C). Plaintiffs' due process complaint certainly meets this deadline. The District contends that Plaintiffs' due process complaint was nonetheless untimely because it did not meet the ten-day deadline outlined in the NOREP/PWN. Though S.W. returned the NOREP/PWN within ten days, he did not check the box indicating that he was going to contact the ODR for a due process hearing. (Doc. 17, att. 4, p. 4). He also did not file his due process complaint until Monday, August 28, 2017, one day after the expiration of the ten-day deadline. (*Id*. at ¶¶ 9-10). Plaintiffs' counsel had emailed the District's counsel on August 23, 2017 regarding this ten-day deadline to inform her that Plaintiffs intended to file their due process complaint on Monday, August 28, 2017 because the deadline expired on a Sunday, but the District still maintains that the filing was untimely. (Doc. 17, att. 4, p. 6).

The Hearing Officer discussed the District's ten-day deadline in its memorandum and order. As the District does in its brief in opposition, the Hearing Officer noted that the Pennsylvania Department of Education ("PDE") has endorsed the ten-day deadline. (Doc. 17, att. 2, p. 15). In doing so, the PDE explained that "nothing in any of the applicable laws would permit" a school to "'hold a child in limbo' while it waited to see if a parent would follow through

10

with initiating a proceeding to challenge an action that it proposed." (*Id.*). This reasoning makes sense; a school should not be forced to wait to implement a proposed placement change for an extended period of time in case the parent's threat to file a due process complaint is hollow.

Here, however, the District was twice put on notice within the ten day period that Plaintiffs would file a due process complaint, and knew that intention was not a hollow threat. First, Plaintiffs' counsel specifically informed the District's counsel on August 23, 2017 that Plaintiffs would file a due process complaint the following Monday. (Doc. 17, att. 4, p. 6). This notice expressly acknowledged the ten-day deadline and Plaintiffs' belief that the Sunday expiration date gave them until Monday to file a complaint. (*Id.*). Second, District representative Jaime Bott testified that she assumed there would be a due process complaint filed upon receipt of S.W.'s signed NOREP/PWN form because S.W. was represented by counsel. When questioned by the Court, Ms. Bott testified:

> Q: But below that, the box requesting relief – or not relief, excuse me – strike that. I request mediation or due process, that's not checked; is that correct?
> A: Correct.
> Q: In an instance – in this instance, what did that mean to you? So he disagrees, obviously, with the action with respect to his daughter. What does that mean?
> A: Knowing that there's an attorney present, I am assuming that there would be some type of filing.

11

Whether or not the due process complaint was technically timely filed within the ten-day deadline is therefore irrelevant. The purpose of the deadline is to avoid a situation where the school must wait to make changes to see if a parent will follow through with initiating their challenge; here, the District was never in that situation as it knew that Plaintiffs intended to file a due process complaint through their attorney. Furthermore, at the time that the District made changes to H.W.'s placement following the meeting, it was on notice that S.W. had filed a due process challenge to those changes. It is undisputed that at the time of the August 30, 2017 meeting, the District had *not yet* transitioned H.W. to the TES placement and had a*ctual knowledge* of the due process complaint. (Doc. 26, p. 5, ¶ 22). For the District to maintain that Plaintiffs failed to meet the ten-day deadline and that pendency was therefore in the not-yet-implemented TES placement not only elevates form over substance, but also does violence to the purpose of the stay-put provision.

We hold that it was wrongful for the District to assert that Plaintiffs' due process complaint was untimely and its intention to proceed to implement the TES program was violative of the stay-put provision. Any agreement that S.W. made at the August 30, 2017 meeting to avoid the implementation of the full TES program was made pursuant to the District's wrongful position and was not a waiver of the IDEA's stay-put provision.

H.W. is therefore entitled to return to her then-current educational placement as of Monday, August 28, 2017, when the due process complaint was filed. The Hearing Officer concluded that placement was "the Learning Support Program as described in the 2017-2017 IEP." (Doc. 17, att. 2, p. 7). We see no reason to disagree with the Hearing Officer in that regard, and the District has not appealed any of the Hearing Officer's findings or conclusions. Thus, we shall order that the District return H.W. to the Learning Support Program as described in the 2017-2017 IEP.

## IV.   CONCLUSION

For the foregoing reasons, we shall grant the Motion for a preliminary injunction and order the District to return H.W. to the Learning Support Program as described in the 2017-2017 IEP, or otherwise come to an appropriate agreement with Plaintiffs.[1]

Plaintiffs' complaint seeks declarations regarding the Hearing Officer's memorandum that relate solely to their prayer for an order requiring the District to return H.W. to her previous educational placement. (Doc. 1). We see no reason to issue declarations of fact that are inherently made in the memorandum and order. While Plaintiffs also seek compensatory education and attorney's fees and costs,

---

[1] At this point in the school year, we realize that it may be more harmful for H.W. to abruptly change her educational program. We encourage all parties to thoughtfully consider what is best for H.W. in taking steps to either comply with this injunction or to otherwise come to an agreement.

because Plaintiffs appealed an interim order of the Hearing Officer, we believe that the best course of action is to return this dispute to the ODR for resolution. Should either party believe that this is not the proper course of action, counsel shall file a letter on the docket within ten (10) days explaining their client's position and proposed relief.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The motion for a preliminary injunction (Doc. 2) is **GRANTED.**

    a.  The Defendant **SHALL** return Plaintiff H.W. to the Learning Support Program as described in the 2017-2017 IEP, unless otherwise agreed upon by S.W. H.W. shall remain in that placement pending administrative proceedings and district court litigation over the proposed change.

2.  Counsel for Plaintiffs shall promptly transmit a copy of this memorandum and order to the Office for Dispute Resolution.

3.  The Clerk of Court **SHALL CLOSE** the file on this case.

4.  Within ten (10) days of the date of this order, if either party believes that closing this action is not the proper disposition, counsel **SHALL FILE** a letter on the docket explaining their client's position and proposed relief.

14

s/ John E. Jones III
John E. Jones III
U.S. District Judge